May it please the Court, my name is Scott Peitzer and I am arguing on behalf of the appellants today. The key thing to understand about this case is that, first I'd like to turn to my regressibility argument as that goes to subject matter jurisdiction. The key thing to understand about this case is that this is about avoidability under Section 544B, not recovery under Section 550 of the Bankruptcy Code. So this goes directly to whether or not what remedies were available for the district court to grant. Can we first start with whether we have a viable entity before us? As I understand the response you filed, you essentially say that Mr. Stepanovich has died in this, but there's been no, there are no corporate officers who can step forward, nobody else can step forward. She might inherit it, she might not inherit it. Where are we? Do we have a viable corporate entity and what are we to do with that? Your Honor, I think we do have viable corporate entities because the entities would pass to her. Would? Would maybe, maybe not. Did, I think. Did. Under the, I think under operation of the will that they do pass to her. Has she been appointed an officer, a director? I mean, who's going to sign your check, for instance, to pay you for your appearance here today? Somebody has to be able to direct this. That's the problem. Yes. I think that one, the, I think that the question of whether this needs, whether the corporation can continue to appear, regardless of who's directing it, is not really the issue here because the corporations still exist. They have not been dissolved and they, the entities still have rights regardless of who is directing the litigation or not and there's nothing left, there's no litigation decisions left to make for purposes of this  Mr. Stavanovich died while I had, after I had already started the reply brief here. And so there was really nothing left for Mr. Stavanovich to do in terms of directing this appeal before he passed away. I think that the last very clear instructions that I received from him would be no different than if a individual had told, if he, even if he was still alive, I don't think I would be required to consult with him regarding oral argument strategy or the contents of the brief. Would you like to provide us a case or something that said that? I don't have a specific case that says that, Your Honor. I'm arguing at this point from general principles of, that the entity still continues to exist and that the law requires consultation on issues that, in terms of the client's objectives, but how the client's objectives are achieved, the particular, you know, what is raised on cross-examination, what's raised in oral argument, that is, that doesn't require any corporate direction, regardless of whether there is a, whether there's a individual person who is capable of speaking on that corporation's behalf. But the, going back to redressability, however, this is not about recovery. This is about avoidability. This is about the availability of a remedy that the district court could grant. And here, there, once 10 million, once the predicate creditor's claim has been satisfied or not satisfied, has been, once enough transactions have been avoided so that the creditor's claim, that are necessary to satisfy the creditor's claim, avoidability for the rest of the transactions is off the table. It's not something that the district court could avoid. They say that wasn't raised in the, in the bankruptcy proceeding. Are they right? That was not raised. And, in fact, I think they say it was affirmatively waived. It was, what was waived in this case was, well, one, it happened after the law of the case decision. But what was really waived here was that Yellowstone Funds is a predicate creditor, and we don't contest that. They are a predicate creditor. The question is what that predicate creditor could, is entitled to, what remedies the predicate creditor is entitled to obtain from the district court under State law. They are entitled to avoid transactions necessary to satisfy their $10 million claim. They are not entitled to avoid any transactions beyond that claim. Because here, we're talking about 346 discreet transactions. But if this were raised at the district court, isn't this the kind of thing that could have been battled out there? It's a tough one to review on appeal, is it not? I think that it's very easy to review on appeal because this is a pure question of law, and it just goes to whether under substantive State law, here, MUFTA, that remedy was available. Maybe when I say it, yes, a question of law certainly is the kind of thing we do. But the proceedings went on as if. So I'm wondering if the agreement on the one predicate creditor really did concede that that was all the government needed to show in order to proceed further to determine the transactions you're talking about, 346. I think that the framing here is better looked at in terms of mootness rather than what they could have raised at the beginning. I think that once the, once $10 million worth of transactions had been avoided, the rest of them became moot. There was no relief that could have been awarded for those other transactions because MUFTA requires, as this Court held in Boussalas and the Minnesota Supreme Court held in Finn, MUFTA goes to the individual transaction. It does not allow for a global approach, which is what this Court rejected in Boussalas. This is 346 discrete transactions. This could have been done with avoiding as little as two transactions. The rest of them, once that threshold was hit, Minnesota law does not allow recovery. The big difference here is that under Section 550, once the transactions have been avoided, then the trustee can recover the full amount. They're not limited to what a state court creditor could do. But we're not at that state. We're at the avoidance state, which United States v. Miller makes clear that there must be a creditor, a predicate creditor, who could actually recover this transaction, could actually avoid the transactions under state law. That's an important limitation on the trustee's power of avoidance that Congress specifically intended with Section 544B. So the easiest way that I think to understand this is to look at what the trustee could have recovered, what Elstone could have recovered in state court. There were numerous transactions that were $5 or $6 million in the list of transactions that are attached to the expert report in the appendix. If the trustee had sought to avoid two of those for a total of $11 million, under state law, under Minnesota statute 513.48B, that recovery would, once those two transactions are avoided, recovery would then be reduced on the judgment side under 48B. 550 would allow them to recover all of it. So the difference is that $1 million excess above the amount necessary to satisfy Elstone's claim under state law would be reduced. Under 550, it's not. But that doesn't go to the underlying avoidability of the transaction. And once the trend — once those transactions have — once enough transactions have been avoided under MUFTA, that no further transactions would be avoidable under MUFTA, then those claims become moot. And that goes to the subject matter jurisdiction in this case, because there's no longer a case or controversy with respect to the remaining transactions, which are based — in essence, they're based on the really — they're basically 346 discrete claims under 544B, because under MUFTA, which is the state substantive law that has to control, it requires treating them as individual claims and analyzing them individually and relief granted individually. And that relief is not available for as many as 344 of those transactions, depending on which transactions are invalidated. And it doesn't matter which transaction — which order the transactions are invalidated in. The key is that they have to be done one at a time in a sequence. They could avoid any number of them, but they have to be analyzed one at a time. And that is precisely what did not happen in this case. And that goes to the — that goes to the relief that the trustee would — that the district court would be able to grant. I'd like to reserve the rest of my time for questions.  Good morning, Your Honors. Igor Margolin of Coburn & Kim on behalf of Doug Kelly, DAPLI. So I do — You have to slow down and speak up for me. Understood. Will do, Your Honor. So I do want to start with the corporate authority issue that was raised initially, because we do share the Court's concern regarding the corporate defendant's or corporate appellant's ability to continue to be in this position. And I think it's important to note that there's a living constituent who is authorized to direct counsel on their behalf. The declaration that counsel filed certainly raises more questions than it answers. The position they appear to be taking is that Mr. Stavanovich's widow is now the authorized representative of these companies because she inherited the ownership of interest of Mr. Stavanovich by virtue of this will. And then — but that, of course, rests on the assumption that Mr. Stavanovich's authority to — You are still talking way too fast. Understood. I will slow down, Your Honor. But that assumption rests on their position that Mr. Stavanovich's authority to instruct counsel on behalf of those companies was based on his ownership interests. But we don't have any evidence of that. Counsel just attested in his declaration his understanding that that's how it works. We certainly don't know — there's no corroborating documentation that was filed that at the time Mr. Stavanovich passed, he was an owner of these companies. And that, I think, is the threshold issue that is very much open and certainly hasn't been established in any manner. And do we know whether she's actually inherited any — well, whether he owned it or any of his interests, do we know if she's inherited it? We do not, Your Honor. That's right. That's the additional issue here. Do you know if there are any other officers, directors, employees, anything? No. As far as we understand from everything that we have seen, and the other side certainly hasn't contended otherwise, at all relevant times here, Mr. Stavanovich was the sole living person with authority to instruct counsel and essentially provide any direction on behalf of the corporate defendants or corporate appellants, rather. So we do think it's a very important issue here that isn't resolved. So where does that leave us? Does that, in your opinion, does that mean we need to dismiss? Do we need to hold it in abeyance and see what happens? What's your recommended outcome? So our recommended outcome would, in the first instance, would be a dismissal because, again, we believe the law supports the notion that if a company has not a single individual that can direct counsel on its behalf. All right. So what if she is entitled? What if he does have the ownership interest and it passes to her? She could appoint herself to be the president or director or whatever. Should we wait for that? So that is an option that the court certainly has as well. Which would require stay and collection of the judgment. I'm not sure that that's necessarily the case, Your Honor. Of course you're not, but that would be my reaction. Well, defendants did move for a stay of execution before the district court and it was denied. That wasn't on this issue. I'm not bringing up a ruling of a completely unrelated question as controlling on this novel question. So, Your Honor, I'm certainly not aware of any authority that in this circumstance would I don't need authority. It's a matter of an appellate court's discretion. Understood, Your Honor. So in that regard why should we allow you to collect the whole 318 million while we wait around to see if she should have she would have been entitled to it if you didn't grab it? So, Your Honor, well, first of all, I think just to be clear, even if there was a basis to stay collection of the judgment while this issue gets resolved, it certainly wouldn't apply to the ability to collect with respect to the judgment that was rendered against Mr. Stavanovich individually, right? Because right now we're only talking about the ability of the corporate defendants to remain in this appeal.  Right. So I think It seems to me for that we have to have them represented and hear an argument. Separate issues pertaining to his appeal that are limited to his appeal. That troubles me greatly. We just brush those aside. They're gone because he died. Despite the fact they were unique to him. Your Honor, and also to be clear, where we are procedurally in this case right now is that Mr. Stavanovich's appeal has been dismissed. Because he died and nobody properly moved to substitute in time. And I understand there's a separate motion on that issue. I believe that could be vacated. Okay. Understood. And it wouldn't be with the proper showing of sort of here and now representation and right to defend. Understood. But you'd wipe that out. You'd take the money and make sure it was out of state before we got there. Well, again, our position on this would be that certainly the issues that are being raised here today do not impact the trustee's ability to collect, to continue enforcement against Mr. Stavanovich. Because we haven't reached, you know, he isn't here to argue it. Well, that's because his appeal has been dismissed. By a panel of our court. Correct. Which a hearing panel can review and reconsider. I agree with all of that, Your Honor. I'm just not sure that leads to the conclusion that there needs to be a stay of judgment enforcement. Because, again, my understanding is that in order for that to have taken place, the other side would have had to make an affirmative motion to stay execution. Now, they did that before the district court was denied. Perhaps they could have done the same thing before the appellate court. They haven't done that. Perhaps. It's done all the time. Come on. Yeah. But I think that is where we stand on this issue. Unless there's any other questions from the panel on this one, I'm happy to proceed to the issues that were being raised on appeal here by the other side. And so with respect to the product and creditor argument, our position that that argument has no merit and should be rejected for two reasons. The first one is that defendants weighed this argument because they never raised it before the district court. What about the — it seemed to me, if I understand correctly, there was a stipulation as to the predicate creditor, correct? That's right, Your Honor. So that there was one of them. What is the scope? At the district court, what was the understanding of the scope of that stipulation? So the stipulation related to whether the predicate creditor element was satisfied so as to give the trustee standing to pursue the Section 544B claims. Was there any — was this issue addressed at all, the issue of the capping of the amount that the district court could order? It was not, Your Honor. And I think that's the critical point here, is that at no point did they argue to the district court below that the amount that the district court could avoid and recover in resolving the trustee's Section 544B claim is somehow capped by this language from Minnesota's fraudulent transfer law regarding how, you know, avoidance can be granted only to the extent that it's necessary to satisfy a predicate creditor's claim. That argument certainly was available to them before the district court, but they never raised it. And so for that reason, our position is that they waived it. Now, they tried to get around waiver by saying, by painting this as an Article III standing issue, but it's not. And you don't have to take my word for it, because when you look at the first page of their opening brief, on the very first page in the summary of the argument, they actually say that what they're raising here is an issue of interaction between Minnesota fraudulent transfer law and bankruptcy standing. Those are their words, not ours, bankruptcy standing. And we think the law is pretty clear. Bankruptcy standing, it's not Article III standing. Bankruptcy standing is about statutory standing. And I think courts pretty clearly have held, and we cited those in our papers, that statutory standing is waivable. If your argument is tied to a statute, and that's what the Supreme Court had said in the Bank of America v. City of Miami decision we cited, if your argument is tied to a statute, it's a statutory standing argument, or sometimes they refer to it as prudential standing. And those arguments are waivable. So we don't think this is an Article III standing issue at all. Then they, I know, pivot to mootness, but I think as this Court has recognized and many others, mootness and standing, in Article III standing, they're essentially two sides of the same coin, right? The only difference is timing. Standing, Article III standing in a conventional sense, is something that gets addressed at the beginning. You want to know in the beginning that you satisfy the trifecta of injury, causation, and redressability. And then you also want to make sure that those three elements continue to persist so that there remains a lot of controversy throughout the litigation, and that's mootness. And certainly in this case, it wasn't like we had a situation where by the time the Court resolved our Section 544 claims, the injury has disappeared. Because the injury here, again, because we're under 544, the injury that's relevant here is the injury to the bankruptcy estate, not to the predicate creditor. And the injury certainly persisted for the entirety of this litigation, and in fact to this day, even with these judgments, if we ever can collect them, it wouldn't make the estate whole because the amount of unsatisfied claims is huge. It's well over a billion dollars. Because as the panel, I believe, is familiar with, the underlying Ponzi scheme was a multibillion-dollar Ponzi scheme. So that's why we don't think there's any merit here to their argument that this is an Article III standing issue or a mootness issue that they're raising, and therefore, that they can avoid and bypass the fact that they indisputably waived it. And as to the merits, we think the argument fails in the merits as well. Because if you look at the language of Section 544B, it authorizes the trustee to bring an action to avoid any transfer that is voidable under applicable law. And so their argument is that, well, to determine if it's voidable, let's look at the remedy section of Minnesota Fraud and Transfer Law right at Section 513.47a that they point to. But that doesn't talk about — that section doesn't inform what you need to demonstrate under Minnesota law to determine voidability. Voidability is addressed in Sections 513.44 and Sections 513.45. Those are the sections that dictate what you need to establish if you're alleging actual fraud or constructive fraud. And those are the statutory sections that use the word voidable. So if we are even going to match, try to match what Section 544 says with the applicable State law, which in this case is the Minnesota Fraud and Transfer Law, those are the sections that you look at and not the remedy section to which they point to. Because the remedy section to which they point to is ultimately about recovery. And I believe, as the other side has already conceded, recovery is different. When you're in the realm of recovery, I think the law is pretty clear. You're no longer governed by any limitations that State law imposes on your ability to recover. In fact, we believe — we cited this in our papers, the in-rate DLC decision that a bankruptcy appellate panel of this circuit, which this Court subsequently affirmed in the Stolner case, they actually addressed pretty much the same question that they raise in here. The question that they addressed was when a trustee alleges a 544b claim, is the amount that he's able to recover governed by the amount of the predicate creditor's claim, or is it the amount that — or is the relevant inquiry what the amount of the estate recovery is? That one didn't involve other transactions. So wasn't that about attorney's fees or some other? Right. Yes. No, that's true. I mean, to the extent there was, you know, anything about that case to which they point as a difference, it did talk about something specific in that case, I believe, to the attorney's fees. But the distinction that they're drawing about how, well, we're in a different realm because we have multiple transfers, we don't think that — we think it's a thin distinction. It doesn't make any difference. Because ultimately, the relevant inquiry here is whether when you're examining the predicate creditor requirement under 544, all you're asking for is, is there a right? As of the petition date, to avoid each of the transfers. In this case, Ellis Stone creditor, the Ellis Stone fund, who was the predicate creditor, they indisputably had that right. And we don't think there's anything in the statute, in the language of the statute or the case law, interpreting it that says that when you're assessing whether a predicate creditor is satisfied as to each of the transactions where you have multiple transfers, we don't see anything that requires them to say, okay, well, but what about if we had — if that predicate creditor had already avoided prior transfers, right? Like, where does that leave them? And I think the decision that the record supports the point that even when you have multiple transfers, it's still — you still need to start looking at them collectively in that manner, is the Ninth Circuit's decision in the — in Rea e Saquiat that we cited. Because it's the decision by the Ninth Circuit in Rea e Saquiat. It said 34 F. 3rd. 800. There, the court posited a hypothetical and said, look, if you have a creditor with $10 in unsecured claims — or, I'm sorry, $5 in unsecured claims, you can use that $5 unsecured claim of the predicate creditor to avoid $40 worth of separate transfers of $10 each. That's — that's what the court determined in Rea e Saquiat. Moreover, the court also said that if you adapt the rule that the defendants are advancing, it would actually lead to arbitrary results. And the reason for that is — and the court kind of went through this different hypothetical and said, the reason it leads to arbitrary results is because then the manner in which — or rather, the scope of what a trustee could avoid or recover becomes governed by the order in which transfers are avoided. And they said that's — that's a very arbitrary way to read the bankruptcy code, and particularly this provision. And the court said we're not going to do that, and we think the same applies here. And so for this reason, I see my time is up, Your Honor, so unless there's any questions for the reasons that I just mentioned and those that are detailed in our briefs, we ask that all the decisions and orders of this record that are being appealed here be affirmed in their entirety. Thank you. Thank you, Your Honor. Let me address a few points. The — first of all, the waiver with respect to standing does not waive mootness. Mootness — if there was a waiver, if the waiver — It's not waived as to what? It's not waived as to mootness. Even if they had standing at the beginning, that must persist. And mootness occurs based on after — facts that happen afterwards. And what happened afterwards — Oh, that's certainly true. Yes. And once the — once there was no longer a — once there was no longer a transfer that was voidable, the remainder become moot. Because this injury did disappear with respect to the estate. The injuries of — we're not talking about the main company here of PCI, the main Petters entity. We're talking about the specific purpose — special purpose entity with which my clients transacted, which was PL Incorporated. And we can't look at the full injury to the estate in terms of the overall Petters scheme here. What we need to look at is this specific transaction — these specific transactions with respect to the entity that was the transferor, which the parties had agreed is PL Incorporated, and that Ellistone is the only predicate creditor for PL and PLI. Once the — once the injury to Ellistone, from whom the trustee is deriving its authority to bring these claims, once that disappears after $10 million worth of transactions have been avoided, the injury disappears. There's no more injury to the creditor to whom — from whom the standing is — from whom the trustee's authority is derived. The other thing that I'd like to point out is that — it's not that under 544B, whether a transaction is voidable is a function only of State law. If you look at the United States Supreme Court's decision in U.S. v. Miller, that was a case in which the Petitioner attempted to avoid a — avoid some transfers to — for personal tax liability to the IRS. Those could not be avoided in State court because of sovereign immunity. The Court held that the waiver of sovereign immunity for bankruptcy goes to the 544B claim, but not to the underlying State claim. Those claims did not have jurisdiction in State court because they — the sovereign immunity prevented that. They could not bring that case. Here, 544B may go to what the — is basically just a shell for what the substantive State law says here. And the trustee is ignoring 548 — I'm sorry, 513.48, which is the recovery statute, 544 — or 513.47 is not a — it's not simply a remedy statute. It goes to the availability of avoidance because the — the person's bringing the — that — a MOFTA claim can only obtain avoidance. Whether it actually is able to receive that remedy is a function of whether it is necessary to satisfy a creditor's claim. And here it was not. I see that my time is up, Your Honors. I will be happy to answer any further questions. Thank you. The case is certainly thoroughly briefed. It raises a lot of issues that are not — not typical and not easy, and we will take them all under advisement. Thank you, counsel. The argument's been helpful.